**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **William Johnson,** | |
| **Plaintiff,** | **1:24-cv-07857 (VEC) (SDA)** |
| **-against-** | **REPORT AND RECOMMENDATION** |
| **J & N Construction Group Corp., et al.,** | |
| **Defendants.** | |

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE VALERIE E. CAPRONI, UNITED STATES DISTRICT JUDGE:**

On March 14, 2025, the Court granted the motion of Plaintiff William Johnson ("Plaintiff" or "Johnson") for a default judgment against Defendant Roy Perdomo ("Defendant" or "Perdomo"). (3/14/25 Order, ECF No. 38.) On October 2, 2025, this action was referred to the undersigned for an inquest into the damages to be awarded in favor of Plaintiff against Perdomo. (*See* Am. Order of Ref., ECF No. 69.) For the reasons set forth below, it is respectfully recommended that Plaintiff be awarded $150,000.00 in emotional distress damages and $200,000.00 in punitive damages, plus post-judgment interest.

**BACKGROUND**

**I.    Established Facts As A Result Of Defendant's Default[1]**

In or about February 2022, Johnson, a Black man, commenced employment with J&N Construction Corp. ("J&N") as a labor shop steward. (Compl., ECF No. 1, ¶¶ 8-9, 15; Johnson

---

[1] In light of Defendant's default, the Court is required to accept all of Plaintiff's allegations as true, except for those pertaining to damages. *See Finkel v. Romanowicz,* 577 F.3d 79, 84 (2d Cir. 2009).

10/16/25 Aff., ECF No. 71-2, ¶¶ 2-3.) Perdomo, a Caucasian man, worked as a shop steward at J&N. (Compl. ¶¶ 12-13; Johnson 10/16/25 Aff. ¶ 5.)

From in or about April 2023 through in or about January 2024, around three times per day, and around five days per week, Perdomo called Johnson the n-word. (*See* Compl. ¶ 25; Johnson 10/16/25 Aff. ¶ 9.) From in or about April 2023 through in or about January 2024, around three times per day, and around five days per week, Perdomo called other Black employees the n-word in Johnson's presence. (*See* Compl. ¶ 26; Johnson 10/16/25 Aff. ¶ 9.)

On or about January 18, 2024, after Perdomo had been causing an issue with another co-worker, as Johnson was walking towards J&N's management office to complain about Perdomo, Perdomo confronted Johnson. (Compl. ¶ 32; Johnson 10/16/25 Aff. ¶ 11.) Perdomo became extremely aggressive towards Johnson and repeatedly called Johnson the n-word and threatened Johnson with a gun, stating, among other things, "I will go uptown and get my piece[.]"[2] (*Id.*)

On or about January 20, 2024, Perdomo electronically messaged Johnson through WhatsApp a picture of Perdomo's penis to intimidate and harass Johnson. (*See* Compl. ¶ 34; Johnson 10/16/25 Aff. ¶ 12.) Johnson's supervisors at J&N became aware of the January 18, 2024 incident and met with Johnson and Perdomo, along with a union representative, to discuss the incident. (Compl. ¶ 33.) Johnson showed his supervisors the video he recorded, but instead of Perdomo being disciplined, Johnson was terminated in late January 2024. (*See id.* ¶ 35.)

---

[2] Johnson recorded a video of Perdomo making these racial slurs. (Compl. ¶ 32.) The video, which is denominated as Exhibit C to the Affidavit of Johnmack Cohen, dated October 16, 2025 ("Cohen 10/16/25 Aff."), was provided to the Court in native format, and was reviewed by the Court in advance of making the recommendation contained herein.

Therapy records from mental health counselors, dated from May 2024 through January 2025, reflect that Johnson was "[f]eeling distress" due in part to having been "[r]acially profiled and discriminated against at his last job [*i.e.*, the job with J&N]" (*see* Ex. A to Cohen 10/16/25 Aff., ECF No. 74-1,[3] at PDF p. 1; *see also* PDF p. 7 ("[Johnson] reports experiencing significant stress due to racism encountered at his previous job, which led to his wrongful termination."), and that his lawyer advised him to get therapy. (*See id*. at PDF p. 4 ("[Patient] reports that he recently was wrongfully terminated at work due to racism, which has been affecting him and his lawyer advised him to get therapy to help with his legal case and help him work through his thoughts and feelings."); PDF p. 12 ("Client reported he was seeking therapy because his attorney advised him he should do so.").) In addition, based upon sessions held in July, August and October 2025, a Licensed Clinical Social Worker performed a psycho-social-emotional assessment of Johnson.[4] (Ex. B to Cohen 10/16/25 Aff., ECF No. 74-2.)

## II.    Procedural History

Plaintiff commenced this action by filing a Complaint on October 16, 2024 asserting claims against Perdomo under 42 U.S.C. § 1981 ("Section 1981"), the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").[5] (*See* Compl. ¶¶ 62-78, 85-95, 101-12.) On November 8, 2024, Perdomo personally was served with the Summons and

---

[3] The affidavit of Plaintiff's counsel (*i.e.*, the Cohen 10/16/25 Aff.) was filed at ECF No. 71-1. The therapy records were filed under seal pursuant to an Order, dated October 17, 2025. (10/17/25 Order, ECF No. 73.)

[4] This assessment also was filed under seal pursuant to the October 17, 2025 Order.

[5] The Complaint also asserted claims against J&N, but (as set forth below) J&N made an offer of judgment in the amount of $50,000.00 that was accepted by Plaintiff (*see* Not. of Acceptance, ECF No. 60) and thus J&N previously was terminated from this action.

Complaint. (11/8/24 Aff. of Service, ECF No. 11.) Perdomo failed to respond to the Complaint and, on January 24, 2025, a Clerk's Certificate of Default was entered against Perdomo. (Cert. of Default, ECF No. 21.) After Perdomo failed to appear at a show cause hearing, the Court ordered that a default judgment be entered in favor of Plaintiff against Perdomo with damages to be determined at the conclusion of the case. (*See* 3/14/25 Order.)

On August 14, 2025, a judgment was entered in favor of Plaintiff against J&N based upon Plaintiff's acceptance of J&N's offer of judgment in the amount of $50,000.00. (8/14/25 Judg., ECF No. 62.) On October 2, 2025, this action was referred to the undersigned for an inquest into the damages to be awarded in favor of Plaintiff against Perdomo. (*See* Am. Order of Ref.) On October 3, 2025, the undersigned issued an Order requiring Plaintiff, among other things, to file a submission regarding the relief he seeks with citations to appropriate legal authority. (10/3/25 Order, ECF No. 70, ¶ 1.) On October 16, 2025, Plaintiff filed the required submission. (*See* Pl.'s 10/16/25 Mem., ECF No. 71.)

## DISCUSSION

The Court first addresses how Plaintiff has established liability against Perdomo[6] and next considers the damages to be imposed against Perdomo based upon Perdomo's default.

---

[6] When a defendant fails to respond to a complaint and a default is entered, all of plaintiff's well-pleaded factual allegations are accepted as true with respect to liability. *See Finkel*, 577 F.3d at 84. However, "a default only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendants." *Gesualdi v. Quadrozzi Equip. Leasing Corp.*, 629 F. App'x 111, 113 (2d Cir. 2015).

I.      **Liability**

Plaintiff asserts a hostile work environment claim against Perdomo under Section 1981.[7] (*See* Compl. ¶¶ 2, 36, 43; *see also* Pl.'s 1/19/25 Mem., ECF No. 17-1, at 2-5.)

A.      **Legal Standards**

Section 1981 provides that "[a]ll persons . . . shall have the same right in every State and Territory to make and enforce contracts, . . . as is enjoyed by white citizens," 42 U.S.C. § 1981 (1982), and has been interpreted to forbid racial discrimination in private employment. *See Johnson v. Railway Express Agency*, 421 U.S. 454, 459-60 (1975). Section 1981 has been interpreted to "provide[ ] a cause of action for race-based employment discrimination based on a hostile work environment." *See Littlejohn v. City of New York*, 795 F.3d 297, 320 (2d Cir. 2015). "The same 'core substantive standards' that apply under Title VII apply to claims of employment discrimination under Section 1981." *Graham v. Cha Cha Matcha, Inc.,* No. 23-CV-09911 (PAE), 2024 WL 3540324, at *4 (S.D.N.Y. July 25, 2024) (quoting *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004)). However, "individuals may be held liable under § 1981 [when] a plaintiff [has] demonstrate[d] 'some affirmative link to causally connect the actor with the discriminatory action[ ]' [and the claim is so] 'predicated on the actor's personal involvement.'" *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000) (internal citations omitted).

"To establish a hostile work environment under . . . § 1981 . . ., a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is

---

[7] Plaintiff also asserts hostile work environment claims against Perdomo under the NYSHRL and the NYCHRL, but because emotional distress damages and punitive damages (which are the types of damages that Plaintiff seeks) are available under Section 1981, the Court need not consider Perdomo's liability under those statutes.

sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn*, 795 F.3d at 320-21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "[T]he conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Id*. (citation omitted). "The incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Id*. (citation omitted). A plaintiff also "must plead facts that would tend to show that the complained of conduct . . . creates such an environment because of the plaintiff's [protected class]." *Brown v. Montefiore Health Sys., Inc.*, No. 24-3078-CV, 2025 WL 2985389, at *3 (2d Cir. Oct. 23, 2025) (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)).

"In considering whether a plaintiff has stated a hostile work environment claim, 'courts should examine the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's job performance.'" *Brown*, 2025 WL 2985389, at *3 (quoting *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014)). "[W]hether racial slurs constitute a hostile work environment typically depends upon the quantity, frequency, and severity of those slurs, considered cumulatively in order to obtain a realistic view of the work environment." *Bloise v. Q4 Generational Wealth, Inc.*, No. 22-CV-10488 (JHR) (SDA), 2023 WL 11836897, at *3 (S.D.N.Y. Nov. 22, 2023) (quoting *Schwapp v. Town of Avon*, 118 F.3d 106, 110-11 (2d Cir. 1997)), *report and recommendation adopted*, 2024 WL 2798862 (S.D.N.Y. May 31, 2024); *see also Levy v. NYC Health + Hosps.*, No. 21-CV-09142 (VEC), 2023 WL 2563116, at *7 (S.D.N.Y. Mar. 10, 2023) ("For racist slurs to constitute

a hostile work environment, there must be more than sporadic racial slurs, there must be a steady barrage of opprobrious racial comments.") (alterations omitted) (citing *Kemp v. A & J Produce Corp.*, 164 F. App'x 12, 14 (2d Cir. 2005)).

### B.    Analysis

Based upon the facts that are assumed to be true, Plaintiff has established a hostile work environment claim. Over an eight-month period, around three times per day, and around five days per week, Perdomo called Johnson the n-word. (*See* Compl. ¶ 25.) During that same period, around three times per day, and around five days per week, Perdomo called other black employees the n-word in Johnson's presence. (*See id*. ¶ 26.) Defendant's conduct went beyond sporadic comments and amounted to a steady barrage of opprobrious racial comments. The Second Circuit has recognized that "perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as [the n-word]." *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 266 (2d Cir. 2023) (quoting *Rivera*, 743 F.3d at 24). "The epithet has been described as a term that sums up all the bitter years of insult and struggle in America, a pure anathema to African-Americans, and probably the most offensive word in English." *Id.* (cleaned up) (quoting *Woods v. Cantrell*, 29 F.4th 284, 285 (5th Cir. 2022)). Thus, the Court finds Defendant's conduct to be sufficiently severe and pervasive to establish a hostile work environment.

These facts also establish that Perdomo was personally involved in the creation of the hostile work environment and indeed that Perdomo is the one who created it. Thus, Plaintiff has established a hostile work environment claim against Perdomo under Section 1981.

## II.        Damages

"Although 'a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.'" *JC Hosp. v. Hochberg*, No. 23-CV-02051 (LJL), 2025 WL 3124313, at \*5 (S.D.N.Y. Nov. 7, 2025) (quoting *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). Plaintiff bears the burden of establishing his entitlement to recovery and thus must substantiate his claims with evidence to prove the extent of his damages. *See id.*

"Damages, which are neither susceptible of mathematical computation nor liquidated as of the default, usually must be established by the plaintiff in an evidentiary proceeding in which the defendant has the opportunity to contest the amount." *Greyhound Exhibitgroup*, 973 F.2d at 158. However, a hearing is not required when a sufficient basis on which to make a calculation exists. *See* Fed. R. Civ. P. 55(b)(2); *see also Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *JC Hosp.,* 2025 WL 3124313, at \*5 ("Federal Rule of Civil Procedure 55(b)(2) leaves the decision of whether a hearing is necessary to the discretion of the district court."). Indeed, the Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, "as long as [the Court] ensured that there was a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (quoting *Fustok*, 873 F.2d at 40); *see also Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) ("a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence").

8

Here, the Court relies on Plaintiff's affidavits and exhibits, which contain the required evidentiary basis upon which to determine damages. Plaintiff seeks both emotional distress damages and punitive damages, which are considered in turn below.

### A. Emotional Distress Damages

#### 1. Legal Standards

Under Section 1981, damages for emotional distress are available. *See Cowan v. Prudential Ins. Co. of Am.*, 852 F.2d 688, 691 (2d Cir. 1988); *United States v. Vulcan Soc., Inc.*, 897 F. Supp. 2d 30, 43 (E.D.N.Y. 2012). "In considering emotional distress damages, 'courts should consider the duration, severity, consequences, and physical manifestations of mental anguish.'" *Castillo v. Isakov*, No. 22-CV-06888 (LJL) (GS), 2024 WL 5323851, at *11 (S.D.N.Y. Dec. 27, 2024) (quoting *Aponte v. Clinton St. Pizza Inc.*, No. 22-CV-03188 (DEH), 2024 WL 3796806, at *9 (S.D.N.Y. July 19, 2024), *report and recommendation adopted,* 2025 WL 89048 (S.D.N.Y. Jan. 14, 2025)). Courts in this Circuit group emotional distress damages into three categories: "garden variety," "significant," and "egregious." *McDaniel v. Scotch & Soda Retail LLC*, No. 23-CV-07859 (DLC), 2025 WL 401108, at *2 (S.D.N.Y. Feb. 4, 2025) (citing *Qorrolli v. Metro. Dental Assocs.,* 124 F.4th 115, 126 (2d Cir. 2024)).

> In garden-variety claims, the evidence of emotional harm is limited to plaintiff's testimony, which describes his or her injuries in vague or conclusory terms, and fails to relate the severity or consequences of the injury.... Significant emotional distress claims are based on more substantial harm or offensive conduct and may be supported by medical testimony, evidence of treatment by a healthcare professional, and testimony from other witnesses. Egregious emotional distress claims yield the highest awards and are warranted only where the employer's

conduct was outrageous and shocking or affected the physical health of the plaintiff.

*Sooroojballie v. Port Auth. of New York & New Jersey*, 816 F. App'x 536, 546 (2d Cir. 2020) (quoting *Maher v. All. Mortg. Banking Corp.*, No. 06-CV-05073 (DRH) (ARL), 2010 WL 3516153, at *2 (E.D.N.Y. Aug. 9, 2010)). "This approach has been used in damages inquests on default judgments as well as review of jury verdicts." *Holness v. Nat'l Mobile Television, Inc.*, No. 09-CV-02601 (KAM) (RML), 2012 WL 1744847, at *4 (E.D.N.Y. Feb. 14, 2012), *report and recommendation adopted as modified*, 2012 WL 1744744 (E.D.N.Y. May 15, 2012).

"Awards for mental and emotional distress are inherently speculative." *Stampf v. Long Island R. Co.*, 761 F.3d 192, 205 (2d Cir. 2014). "There is no objective way to assign any particular dollar value to distress." *Id*. Nonetheless, "a legal system has an obligation to ensure that such awards for intangibles be fair, reasonable, predictable, and proportionate." *Id.* (internal quotation marks omitted). The case law is mixed as to the ranges of damages for "garden variety" and "significant" emotional distress damages. Recent decisions have found that garden variety emotional distress claims generally merit $30,000 to $125,000 awards. *See Qorrolli*, 124 F.4th at 126.[8] "Claims categorized as significant, based on more substantial harm or more offensive conduct, generally support damages awards ranging from $50,000 to $200,000, although awards of up to $500,000 may also be upheld under some circumstances." *Id.* (cleaned up). Awards for "egregious" emotional distress can exceed $200,000.00. *See Emamian v. Rockefeller Univ.*, No. 07-CV-03919 (DAB), 2018 WL 2849700, at *16 (S.D.N.Y. June 8, 2018).

---

[8] *See also Bethel v. Royal Leaf NY LLC*, No. 24-CV-09073 (DLC) (KHP), 2025 WL 3216640, at *8 (S.D.N.Y. Oct. 9, 2025), *report and recommendation adopted*, 2025 WL 3216413 (S.D.N.Y. Nov. 18, 2025); *Ravina v. Columbia Univ.*, No. 16-CV-02137 (RA), 2019 WL 1450449, at *11 (S.D.N.Y. Mar. 31, 2019); *Duarte v. St. Barnabas Hosp.*, 341 F. Supp. 3d 306, 320 (S.D.N.Y. 2018).

2. **Analysis**

The Court finds that Plaintiff is entitled to recover emotional distress damages. Plaintiff's claim for emotional distress damages is supported by evidence submitted by Plaintiff, including therapy records and a psycho-social-emotional assessment performed by a Licensed Clinical Social Worker.

With respect to the quantum of emotional distress damages, Plaintiff seeks $1,000,000.00. (*See* Pl.'s 10/16/25 Mem. at 1.) The Court carefully has considered Plaintiff's evidence and finds that an award of $1,000,000.00 in emotional distress damages is excessive. While it certainly was reprehensible for Perdomo to repeatedly use the n-word in the workplace, including in reference to Plaintiff, the Court finds that Plaintiff's evidence "falls far short of the type of shocking, prolonged discriminatory conduct and/or long-term emotional harm that are part and parcel of the larger damage awards that can be sustained for egregious cases." *See Sooroojballie*, 816 F. App'x at 547 (rejecting categorization of damages as "egregious" when plaintiff did not provide evidence of lasting psychological effects from the hostile work environment and had no further contact with mental health treatment provider after beginning new job) (collecting cases); *see also Maher*, 2010 WL 3516153, at *2. Emotional distress damages even in the $500,000 range are "rarely awarded [in] this District, even in cases presenting mental health symptoms so severe that they affected the plaintiff's physical health or interfered with her ability to obtain or maintain gainful employment[.]" *Garcia v. Comprehensive Ctr., LLC*, No.

17-CV-08970 (JPO) (BCM), 2019 WL 8274296, at *8 (S.D.N.Y. Nov. 21, 2019), *report and recommendation adopted,* No. 17-CV-08970 (JPO), 2020 WL 1435002 (S.D.N.Y. Mar. 24, 2020).[9]

The Court finds that Plaintiff's emotional distress claim is best characterized as "significant" since it is based on substantial harm and offensive conduct and is supported by medical evidence. The therapy records submitted to the Court, which cover the period between May 2024 and January 2025,[10] document that Plaintiff experienced stress and anxiety due to the racism he experienced at his prior job, and that he exhibited symptoms of post-traumatic stress disorder ("PTSD"). (*See* Ex. A to Cohen 10/16/25 Aff. at PDF pp. 1, 7, 10, 12.) These records indicate diagnoses of Generalized Anxiety Disorder ("GAD") and PTSD. (*See id.* at 7, 12.) However, the records do not reflect that Plaintiff was prescribed medication or that Plaintiff's physical health was impaired as a result. The Court also finds notable that Plaintiff did not himself seek

---

[9] In support of his request for $1,000,000.00 in emotional distress damages, Plaintiff cites only to the Judgment entered in *Pardovani v. Crown Building Maintenance Co.*, No. 15-CV-09065 (SHS), ECF No. 215 (S.D.N.Y. November 18, 2022), where the jury awarded $800,000.00 in compensatory damages against the two corporate defendants. (*See* Pl.'s 10/16/25 Mem. at 3.) In *Pardovani*, the plaintiff had sued the corporate defendants as joint employers, as well as two individual defendants, Richard Cruz ("Cruz") and Joseph Miele ("Miele"), who worked with the plaintiff, alleging, among other things, a hostile work environment claim under Section 1981. *See Pardovani v. Crown Bldg. Maint. Co.*, No. 15-CV-09065 (JPO), 2020 WL 2555280, at *1, *5 (S.D.N.Y. May 20, 2020). The plaintiff offered evidence that both Cruz and Miele used the n-word. *See id*. at *3. Following trial, the verdict sheet reflects that the jury found the corporate defendants liable as co-employers under Section 1981 (allocating liability between them, 70% to one and 30% to the other), but found Cruz and Miele, who uttered the n-word, not liable. (*See* Verdict Sheet, 15-CV-09065 ECF No. 213.) Moreover, the plaintiff in *Pardovani* alleged that the "discriminatory treatment of [him] took such an emotional and physical toll on [him] that he fainted twice at work" and on one occasion "was taken by ambulance to the hospital after he fainted." (*See* Am. Compl., 15-CV-09065 ECF No. 16, ¶ 40.) Plaintiff has not explained how *Pardovani* is factually analogous to the present case and, in any event, the Court finds that *Pardovani* is not a useful comparator.

[10] The July 2025 psycho-social assessment submitted by Plaintiff indicates that he reported participating in psychotherapeutic services since 2023 on a weekly basis, but no other records have been provided to the Court. (*See* Ex. B to Cohen 10/16/25 Aff. at 2.)

out therapy after the incident, but waited more than three months to seek such therapy after his lawyer advised him to do so "to help with his legal case." (*Id.* at PDF p. 4.)

In the July 2025 psycho-social assessment, Johnson reported experiencing "persistent symptoms associated with [GAD and PTSD] including flashbacks, nightmares, irritability, hypervigilance, social isolation, labile mood, and overall changes in his personality." (*See* Ex. B to Cohen 10/16/25 Aff. at 5.) He further reported "the inability to sleep, concentration difficulties, frequent crying episodes, and fluctuating appetite, as a result of the stress he has endured being the victim of discrimination at the hands of his co-workers, which was not stopped by his supervisors." (*Id.* at 7.) The Court discounts to some extent the psycho-social-emotional assessment since it was prepared based upon sessions with Plaintiff that occurred more than 18 months after Plaintiff's employment at J&N and is heavily based on self-report techniques. (*See id.* at 1, 6.) Many of the symptoms Plaintiff reported as part of the assessment were not corroborated and are more severe than symptoms documented in his prior records. (*See generally* Ex. A to Cohen 10/16/25 Aff.)

The therapy records also reflect other factors that affected Plaintiff's emotional well-being, in addition to the distress caused by the hostile work environment Plaintiff experienced at J&N. (*See* Ex. A to Cohen 10/16/25 Aff. at PDF pp. 1, 12-13.) Many of Plaintiff's therapy records focus on issues unrelated to Plaintiff's employment. (*See id*. at PDF pp. 15, 19, 23, 25, 27, 29, 37, 39.) Further, the records indicate that a source of Plaintiff's emotional distress was his termination from J&N, which is distinct from the hostile work environment created by Perdomo. (*See id.* at PDF pp. 1, 4.) "A plaintiff is only entitled to compensatory damages for emotional distress that resulted from actions for which the defendant is actually liable." *Khan v. Hip*

*Centralized Lab'y Servs., Inc.*, No. 03- CV-02411 (DGT), 2008 WL 4283348, at *9 (E.D.N.Y. Sept. 17, 2008) (citing cases). Thus, Plaintiff is not entitled to damages based upon the emotional distress caused by the other aspects of Plaintiff's life that are addressed in the therapy records or for conduct by persons other than by Perdomo.

Having considered the amount, duration and consequences of Plaintiff's emotional distress, as well as the evidence submitted by Plaintiff, the Court finds that an award of $150,000.00 is appropriate. This award exceeds amounts awarded in "garden variety" cases involving racial discrimination[11] and is consistent with awards in analogous cases. *See, e.*g., *Caravantes v. 53rd St. Partners, LLC*, No. 09-CV-07821 (RPP), 2012 WL 3631276, at *24 (S.D.N.Y. Aug. 23, 2012) (awarding $150,000 in emotional distress damages where supervisor's harassment was "egregious" and the impact on plaintiff's mental health was "significant," including sleeping disturbances, marital problems, major depressive disorder and suicidal thoughts, but plaintiff's condition was "treatable" and she was "currently working in a restaurant"); *Petrovits v. New York City Transit Auth.*, No. 95-CV-09872 (DFE), 2003 WL 22349676, at *5 (S.D.N.Y. Oct. 15, 2003) (sustaining $150,000 compensatory damages award where plaintiff was called "stupid," "insubordinate" and sought treatment in connection with sex-based discrimination at work); *Simmons v. New York City Transit Auth.*, No. 02-CV-01575 (CPS) (RLM), 2008 WL 2788755, at *1 (E.D.N.Y. July 17, 2008), *aff'd*, 340 F. App'x 24 (2d Cir. 2009) (sustaining $150,000 compensatory damages award in disability discrimination case where plaintiff was

---

[11] *See, e.g., Quintero v. Angels of the World, Inc.,* No. 19-CV-06126 (DG), 2021 WL 4464123, at *6 (E.D.N.Y. Sept. 10, 2021), *report and recommendation adopted*, 2021 WL 4463488 (E.D.N.Y. Sept. 29, 2021) (awarding $30,000 to plaintiff who alleged "intense stress and anxiety," as well as "significant physical manifestations" as result of racial discrimination including being "regularly called 'Monkeys' and 'Zoo Animals' from the 'Bronx Zoo.'") (collecting cases).

depressed and her treating psychologist testified that plaintiff's employment situation was source of her stress); *see also Maher*, 2010 WL 3516153, at *3 (adopting recommendation on inquest awarding $170,000 in emotional distress where plaintiff was humiliated by repeated inappropriate touching and sought psychological counseling).

Accordingly, the Court recommends that Plaintiff be awarded the sum of $150,000.00 in compensatory emotional distress damages.[12]

### B. Punitive Damages

#### 1. Legal Standards

Punitive damages are recoverable on a Section 1981 claim. *See Claud v. Brown Harris Stevens of Hamptons, LLC*, 676 F. Supp. 3d 100, 142 (E.D.N.Y. 2023). "An award of punitive damages is 'a discretionary moral judgment' that the defendant has engaged in conduct that is so reprehensible that it warrants punishment." *Tolbert v. Queens Coll.*, 242 F.3d 58, 77 (2d Cir. 2001) (quoting *Smith v. Wade*, 461 U.S. 30, 52 (1983)). "Punitive damages may be awarded for a civil rights claim if 'the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Id*. (quoting *Smith*, 461 U.S. at 56) (emphasis omitted). "These terms 'pertain to the [defendant's]

---

[12] The Court declines to recommend damages in a higher range because cases in which higher amounts have been awarded involve evidence of more acute physical and mental health symptoms. *See*, *e.g.*, *Sooroojballie,* 816 F. App'x at 547 (reducing award to $250,000 for emotional distress from hostile work environment based on race that lasted more than a year, resulting in insomnia, anxiety, and depression, for which the plaintiff was prescribed medication and received counseling and discussing cases with awards in excess of $200,000); *Angulo v. 36th St. Hosp. LLC*, 19-CV-05075 (GBD) (SLC), 2020 WL 4936961, at *1-2 (S.D.N.Y. Aug. 24, 2020) (awarding $300,000 in emotional distress damages against a defaulting defendant in a sexual harassment case where plaintiff suffered, "physical injuries and severe emotional distress, including attempted suicide").

knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination.'" *Id*. (quoting *Kolstad v. American Dental Association*, 527 U.S. 526, 535 (1999)).

In assessing the reasonableness of punitive damages, there are several factors that courts must consider: "(1) the degree of reprehensibility of the defendant's conduct; (2) the difference between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded and the civil penalties imposed in comparable cases." *DeCurtis v. Upward Bound Int'l Inc.*, No. 09-CV-05378 (RJS), 2011 WL 4549412, at *5 (S.D.N.Y. Sept. 27, 2011) (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)).[13]

The Supreme Court has stated that "[p]erhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Gore*, 517 U.S. at 575. Courts determine the reprehensibility of a defendant's conduct by considering whether, *inter alia*,

> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003) (citation omitted).

---

[13] In addition, the court typically is required to consider the defendant's financial circumstances in determining an award of punitive damages. *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 101 (E.D.N.Y. 2020). However, "by defaulting, defendant has surrendered the opportunity to demonstrate that his financial circumstances should constrain the amount of any such award." *Id*. at 102 (quoting *Mathie v. Fries*, 121 F.3d 808, 816 (2d Cir. 1997)).

"Awards of punitive damages are by nature speculative, arbitrary approximations." *Payne v. Jones*, 711 F.3d 85, 93 (2d Cir. 2013).  "No objective standard exists that justifies the award of one amount, as opposed to another, to punish a tortfeasor appropriately for his misconduct." *Id*.

### 2.        Analysis

Perdomo's conduct certainly was reprehensible. His direction of persistent racial slurs at Plaintiff in the workplace over an eight-month period evinced malice and a complete disregard for the rights of Plaintiff as a Black man. It thus is appropriate to impose punitive damages to punish Perdomo for his conduct.

With respect to the quantum of punitive damages, Plaintiff seeks $2,000,000.00 (*see* Pl.'s 10/16/25 Mem. at 3), which the Court finds excessive. *See Chisholm v. Mem'l Sloan-Kettering Cancer Ctr.*, 824 F. Supp. 2d 573, 579 (S.D.N.Y. 2011) ("A punitive damages award of $1 million against an individual defendant is excessive in all but the most egregious cases.").  Moreover, in view of the compensatory emotional distress damages that are recommended, a lower ratio of punitive to compensatory damages is "particularly" appropriate because "[i]mposing extensive punitive damages on top of such an award stacks one attempt to monetize highly offensive behavior, which effort is necessarily to some extent visceral, upon another." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 165-66 (2d Cir. 2014). In such circumstances, "a roughly 2:1 ratio of punitive damages to what, by its nature, is necessarily a largely arbitrary compensatory award, constitutes the maximum allowable in these circumstances." *Id*. at 166. However, courts in this Circuit routinely award punitive damages in an amount equal to or less than an award of compensatory damages. *See, e.g., Pizarro v. Quezada*, No. CV-24-02422, 2025 WL 2865251, at *4 (2d Cir. Oct. 9, 2025) ("[C]ourts in this circuit have often awarded punitive damages in an amount

equal to, or less than, an award of compensatory damages, where the conduct concerned a sexual assault."); *Sarhadi v. Geever*, No. 24-CV-00031 (BKS) (PJE), 2025 WL 2050930, at *9 (N.D.N.Y. July 22, 2025) ("In a case with substantial compensatory damages, a 1:1 ratio is permissible."); *Garcia*, 2019 WL 8274296, at *9 (awarding $75,000 in punitive damages compared to $175,000 in compensatory damages); *Duarte*, 341 F. Supp. 3d at 333 (finding punitive damages award equal to compensatory damages award appropriate).

Having considered all the relevant factors, the Court recommends that Plaintiff be awarded $200,000.00 in punitive damages. The Court finds that this amount is appropriate in view of the facts of this case, including the threat of violence by Perdomo, and the ratio to compensatory damages. Although "the comparison of punitive awards is of limited utility because each award is fact-specific[,]" *Garcia*, 2019 WL 8274296, at *9 (cleaned up),[14] the Court finds that this award is comparable to other cases. *See Thomas v. iStar Fin., Inc.*, 652 F.3d 141, 150 (2d Cir. 2011) (in race discrimination and retaliation case, affirming remittitur of $1.6 million punitive damage award to $190,000, which was lower than compensatory damage award, because plaintiff suffered no physical injury, and there was no evidence of indifference to health or safety of others); *Manzo v. Sovereign Motor Cars, Ltd*., No. 08-CV-01229 (JG) (SMG), 2010 WL 1930237, at *1, *6 (E.D.N.Y. May 11, 2010) (in case where plaintiff alleged she was harassed

---

[14] *See also Hill v. Airborne Freight Corp.*, 212 F. Supp. 2d 59, 76 (E.D.N.Y. 2002) ("comparing punitive damage awards in other cases where employers were found liable for discrimination . . . is of limited utility because a wide range of awards have been upheld." (collecting cases upholding awards ranging from $10,000 to $1.25 million), *aff'd*, 93 F. App'x 260 (2d Cir. 2004).

through creation of hostile work environment and was fired her in retaliation for complaining about it, $200,000 punitive damage jury award found "not so outside the range of comparable awards so as to require a remittitur"), *aff'd*, 419 F. App'x 102 (2d Cir. 2011); *see also Duarte*, 341 F. Supp. 3d at 329 ("In employment discrimination cases, cases upholding punitive damage awards of $200,000 or more generally involve discriminatory or retaliatory termination resulting in severe financial vulnerability to plaintiff, repeated incidents of misconduct over a significant period of time, repeated failures to address complaints of discrimination, and/or deceit." (cleaned up)).

## CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiff be awarded against Perdomo the sum of $150,000.00 in emotional distress damages and $200,000.00 in punitive damages. In addition, it is recommended that Plaintiff be granted post-judgment interest on the full judgment amount, pursuant to 28 U.S.C. § 1961.

No later than December 9, 2025, Plaintiff shall serve a copy of this Report and Recommendation upon Perdomo by first-class mail and file proof of service to the ECF docket.

Dated:      New York, New York
            December 6, 2025

_____
**STEWART D. AARON**
**United States Magistrate Judge**


\*                \*                \*

19

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Caproni.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).